## COOPER v. RALEIGH AND GASTON RAILROAD COMPANY et al.

The evidence in this case presented questions of negligence which should have been solved by a jury, and not determined by a judgment of nonsuit.

Argued June 14,—Decided July 22, 1898.

Action for damages. Before Judge Cobb. City court of Athens. August term, 1897.

Plaintiff caused 18 mules and 10 horses to be shipped from Atlanta to Athens in January, 1897, over defendant's railroad by a night train, under a contract of shipment in which it is stated that live stock in car-lots will not be taken at the special rates given but will be charged first-class rates, unless the shipper and agent execute the following contract. It acknowledges receipt of the mules and horses, but specifies no rate of freight charges. It then proceeds as follows: The railroad company and connecting lines transport live stock only at first-class rates, except when in consideration of a reduced rate in car-load lots the owners and shippers assume certain risks specified below. Now, in consideration of said railroad agreeing to transport said live stock at the reduced rate of $.... per car-load, and a free passage to the owner or his agent on the train with the stock, the owner and shipper hereby assume and release the railroad from all injury, loss, and damage or depreciation which the animals, or either of them, may suffer in consequence of either of them being weak or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, etc., and from all other causes whether mentioned or not, and all risks of escape of any or all of said animals, and from any other cause incidental to railroad transportation and which shall not have been caused by fraud or gross negligence of the railroad company. The owner and shipper is to load, transfer, and unload the stock with the assistance of the company's agent, at his or her own risk, and feed, water, and attend to same at his own expense and risk while in the stock-yard of the company or where it may be unloaded for any purpose. While the company's agents and employees shall provide the owner or person

in charge of the stock all proper facilities on trains and at stations for taking care of the same, the business of the company shall not be delayed by the detention of trains to unload or reload stock in any cars, but cars may be left at a station upon request of a person in charge of same, to be forwarded by the next freight-train if he so directs, and the owner or shipper agrees that the company shall not be liable for any damage or injury that may occur to said animals or any of them from any cause whatsoever during the time they may remain so unloaded and out of the cars. The owner or shipper in charge of the stock shall ride upon the freight-train in which the stock is transported and release the railroad company from all liability for personal injury; and this agreement witnesseth that the owner and shipper has delivered to the company the live stock to be transported on the foregoing conditions and stipulations.

According to the testimony the train left Atlanta about 6 o'clock in the evening, and arrived in Athens about midnight. Plaintiff himself left Atlanta about 8 o'clock that night on a passenger-train and reached Athens about 11 o'clock. He never saw the stock until the next morning about 9 o'clock, when he went to unload them and ascertained that they had been unloaded shortly after their arrival, between 12 and 1 o'clock, by a servant of the company and driven into the stock-pen of the company near the depot. One of the mules was found with its leg badly injured, and the company's agent explained that the animal had got its foot hung in the latticework at the side of the car and they had to unload the stock to get this mule out. Plaintiff asked why they did not put the stock back on the car after getting the mule out, and the agent replied that he did not know. The weather was exceedingly cold, the coldest of the winter, and the horses and mules were all in bad condition from having caught distemper by exposure (the stock-pen being entirely unsheltered), resulting in specified items of damage to plaintiff on account of having to treat the animals. He testified that the slats of the car seemed to be 5, 6 or 7 inches apart. He did not measure them. The latticework on this car seemed to be wider than it usually was on stock cars. He was present when the animals were loaded and saw that they were put on the

car right. He did not take particular notice of the car at that time. It was a new car and seemed all right. He made no ɔb-jection to the car when the mules were loaded. Stock cars have a solid plank wall on the side up to a certain height, and then the lattice begins and continues to the top. He had made several shipments of stock like this, and had never unloaded the stock at night; was not required to do so by the railroad people. He had always traveled on the passenger-train with a free pass, without objection from defendant. Had the animals been al-lowed to remain on the car, or had they been replaced after re-lieving the injured one, they would have been better protected from cold; their natural heat would have tended to keep them warmer. Another car of live stock went on the same train to Athens, and this car was left unloaded until the next day. The horses in this car were all right except one, which was down.

On motion the court granted a nonsuit; and plaintiff excepted, contending that the contract of shipment did not relieve the defendant from liability for injuries occasioned by a defect-ive car, nor from the injuries occasioned by unloading the stock at midnight in the cold weather and leaving the animals exposed without shelter, these being the grounds of negligence alleged in the declaration.

*H. C. Tuck,* for plaintiff.    *Erwin & Brown,* for defendants.

LUMPKIN, P. J. The plaintiff in error, C. W. Cooper, brought an action against the Raleigh & Gaston Railroad Com-pany and the Seaboard & Roanoke Railroad Company, as lessees of the Georgia, Carolina & Northern Railroad Company, for damages alleged to have been occasioned by the defendants' neg-ligence to certain horses and mules which they had undertaken to transport from Atlanta to Athens. The petition alleged that one of the mules was seriously injured because of a defect in the car in which it and the other animals were shipped, and that all of the stock was greatly damaged because the defendants, upon the arrival of the car at Athens, unloaded the same and turned the stock loose in an open and unprotected lot at about one o'clock A.M. of a bitterly cold morning, by reason of which fact they became diseased with cold and distemper, and their value

was greatly impaired. The material evidence introduced on the trial appears in the official report preceding this opinion. At the conclusion of the evidence the judge granted a nonsuit, and the plaintiff excepted.

The case should, in our opinion, have been submitted to the jury. The evidence presented questions of negligence which should have been solved by them and not by the judge. It was an open question whether or not there was a defect in the car by which one of the animals was injured; and it was, under all the facts and circumstances, peculiarly a question for the jury whether, upon the arrival of the car at its destination, the defendants' agents were, or were not, guilty of negligence, as alleged. We do not mean to intimate whether there should or should not be a recovery for the plaintiff.

*Judgment reversed. All the Justices concurring.*